**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SUNBIT, INC.,

      Plaintiff,

v.                                                      Case No: 8:26-cv-1138-KKM-CPT

KATHIE KEIL, SYNCHRONY
FINANCIAL, and CARECREDIT LLC,

      Defendants.

_____

## **ORDER**

The plaintiff Sunbit, Inc., moves to temporarily restrain defendants Kathie Keil, Synchrony Financial, and CareCredit LLC. Mot. for Temporary Restraining Order and Preliminary Injunction (Mot. for TRO) (Doc. 2). Specifically, Sunbit seeks to enjoin all defendants from using, copying, or disclosing Sunbit's confidential and trade secret information, enjoin Keil from engaging in any business activity in Florida that is competitive with Sunbit, and enjoin Synchrony and CareCredit from employing Keil in any position competitive with Sunbit's healthcare consumer financing business in Florida. *See* Proposed TRO Order (Doc. 2-1) at 2–3. Because the extreme remedy of an ex parte temporary restraining order is not warranted in these circumstances,

the motion is denied as to its request for a temporary restraining order. I will rule on the motion for a preliminary injunction after briefing concludes.

## I.   BACKGROUND

Sunbit is a technology company that provides "point-of-sale consumer financing solutions." Compl. (Doc. 1) ¶ 1. "Synchrony is a consumer financial services company that also offers consumer financing solutions . . . ." *Id.* ¶ 5. "CareCredit is a subsidiary of Synchrony" and "provides a point-of-sale consumer financing solution that directly competes with Sunbit in the healthcare consumer financing space, including in the dental vertical market." *Id.* Keil worked for CareCredit from February 2016 to October 2022 before working for Sunbit from October 2022 to February 2026. *Id.* ¶ 3. Keil "returned to CareCredit/Synchrony in late February or early March 2026." *Id.*

After learning that Keil left for a competitor, Sunbit sent Keil a March 13, 2026 cease-and-desist letter demanding that she cease violating "her non-competition, confidentiality, and non-solicitation obligations." *Id.* ¶ 49. Since March 17, 2026, counsel for Synchrony, who appears to also act on behalf of CareCredit and Keil, has been in contact with Sunbit's counsel regarding the nascent dispute. *See id.* ¶¶ 50–51, 56–58, 69.

In her roles at Sunbit, Keil had access to Sunbit's trade secrets and confidential information, including "existing, upcoming, and prospective

2

merchant lists; product pricing, features, and performance data; major business initiatives; sales and marketing strategies; customer account information; pricing methodologies; and competitive intelligence." *Id.* ¶ 82. Keil agreed to Sunbit's Confidential Information and Invention Assignment Agreement, which "includes nondisclosure and confidentiality provisions that survive the termination of [one's] employment relationship with Sunbit." *See id.* ¶¶ 24, 81.

Sunbit alleges that "Keil has violated or is in imminent risk of violating her confidentiality and non-solicitation obligations and/or is using or disclosing Sunbit's Confidential Information and/or trade secrets in connection with her work for CareCredit and Synchrony." *Id.* ¶ 65. Sunbit also alleges that, "[b]y hiring Keil to perform a substantively identical role at a direct competitor, [Synchrony and CareCredit] knew or had reason to know that Keil's knowledge of Sunbit's trade secrets would inevitably be used or disclosed in the course of that competing employment." *Id.* ¶ 83. Thus, Synchrony and CareCredit's alleged conduct "constitutes misappropriation or threatened misappropriation . . . under the DTSA." *Id.* ¶ 84; *see also id.* ¶ 100 (making similar allegations in support of Sunbit's Florida Uniform Trade Secrets Act claim).

Beyond pointing to general knowledge of Sunbit's trade secrets that Keil might remember and use or share with Synchrony and CareCredit, Sunbit

3

alleges the following facts to support its misappropriation of trade secrets claims: (1) during her employment at Sunbit, "Keil used a separate business line on her personal phone" to conduct business for Sunbit and accessed unspecified "Confidential Information" on the phone; (2) the "separate business line" is still active on Keil's phone, and Sunbit expects that Sunbit's confidential information remains on the phone; and (3) the defendants—while agreeing with Sunbit in pre-suit discussions that Keil's phone should be imaged and searched—have not yet agreed with Sunbit on search protocols. *See id.* ¶¶ 52, 62–63. Synchrony's counsel "has repeatedly suggested that it may move forward with imaging and deleting information from Keil's personal phone imminently without agreement on the details by Sunbit." *Id.* ¶ 69.

Sunbit alleges that Synchrony and CareCredit have provided inadequate answers regarding the nature of Keil's position and refuse to "abandon their plan to employ Keil in a position that competes with Sunbit." *See id.* ¶ 73. Instead, Synchrony and CareCredit have "temporarily suspended Keil from working in any capacity after receiving Sunbit's cease and desist letter." *Id.* Synchrony has "represented that Keil would not be working until the issues [are] resolved between the parties." *Id.* ¶ 53.

In response, Sunbit filed this action on April 20, 2026, and moves for an ex parte temporary restraining order and preliminary injunction. Despite

being "continuously in contact with counsel for Synchrony Financial since March 17, 2026," Sunbit has not provided notice regarding its motion for a temporary restraining order. Mot. for TRO at 27. Based on Synchrony's counsel's statement on April 6, 2026, that "we need to move forward with getting the device imaged," Sunbit did not provide notice because of its concern that "immediate and irreparable injury will result unless a TRO is issued, preventing action from being taken as to Keil's [phone] without agreed protocols to prevent spoliation of evidence." *Id.*

Sunbit separately moves for an order authorizing expedited discovery to prepare for a hearing on the preliminary injunction portion of the instant motion. *See* Mot. for Expedited Discovery (Doc. 5).

## II.   ANALYSIS

To obtain a temporary restraining order, Sunbit must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam). Importantly, a court may issue a temporary restraining order without notice to the adverse party or its attorney only if:

(A) specific facts in an affidavit or a verified complaint clearly show

5

> that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1)(A)–(B). Courts generally consider "whether the movant has shown adequate justification for such *ex parte* relief before addressing whether the movant has met the four-pronged test." *Liqid, Inc. v. Stevenson*, No. 8:23-CV-0314-KKM-TGW, 2023 WL 12170633, at *2 (M.D. Fla. Feb. 14, 2023) (quoting *Lara v. Moghraby*, No. 8:19-cv-2798, 2019 WL 6487321, at *1 (M.D. Fla. Dec. 3, 2019)). Ex parte temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).

I start with the last requirement. Sunbit has not established that irreparable harm will occur absent an opportunity for defendants to be heard. Instead, Sunbit proceeds based on inferences that do not satisfy the standard. Although Sunbit's trade secret misappropriation claims include broader allegations, in support of the need for ex parte relief Sunbit identifies only the defendants' purportedly inadequate answers regarding Keil's position and the possibility that Keil has continued access to some confidential information

6

through her personal phone. *See* Mot. for TRO at 26. To this unsteady foundation it adds the possibility that the defendants might "move forward with imaging and deleting information from Keil's personal phone imminently without agreement on the details by Sunbit." *Id.* Even if Sunbit's fears come true—despite the defendants agreeing that the phone should be imaged and searched—the allegedly irreparable harm would involve preserving a record of the confidential files and data, if any, that were on the phone. *See id.* at 20. Further, the defendants represent that Keil is suspended until the dispute between the parties is resolved and they have been on notice of their duty to preserve evidence and avoid spoliation from at least March 13, 2026, the date that Sunbit sent the cease-and-desist letter to Keil. *See* Cease-and-Desist Letter (Doc. 1-4) at 5; Mot. for TRO at 8 (noting that Synchrony's counsel contacted Sunbit's counsel on March 17, 2026, in response to the letter); Mot. for TRO at 10 (admitting that Synchrony "temporarily suspended Keil from working in any capacity after receiving Sunbit's cease and desist letter").

"Rule 65 requires that courts consider not only the need for the restraining order, but also the need for proceeding ex parte." *Liqid, Inc.*, 2023 WL 12170633, at *2 (citation modified). Sunbit does not persuade that notice to the defendants of the filing of this motion would lead to irreparable harm. If anything, Sunbit's proffer explains only why this motion is time-sensitive, not

why it must be granted without giving the defendants notice. An ex parte temporary restraining order is an "extreme remedy to be used only with the utmost caution." *Levine v. Comcoa Ltd.*, 70 F.3d 1191, 1194 (11th Cir. 1995) (Hill, J., concurring). Because that extreme remedy is not warranted based on these representations, I make no determination as to whether a preliminary injunction would be under the familiar four-part test.

## III.   CONCLUSION

Because Sunbit has neither established that an injunction absent notice to the defendants is necessary under these circumstances to avoid irreparable harm nor that Sunbit has taken steps to notify the defendants of the motion, a temporary restraining order is not warranted. Accordingly, it is **ORDERED:**

1.   Sunbit's Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 2) is **DENIED** as to its request for a temporary restraining order. Because Sunbit requested both a temporary restraining order and a preliminary injunction in the instant motion, Sunbit need not submit additional papers to convert the motion into one for a preliminary injunction. Sunbit's motion is taken under advisement as to its request for a preliminary injunction, which the Court will rule on following the completion of briefing and, if needed, an evidentiary hearing.

2.    In accordance with Local Rule 6.01(c), Sunbit is directed to serve on the defendants the summons, the complaint, this order, and each paper filed in support of the motion for a temporary restraining order and preliminary injunction **no later than April 23, 2026**. Sunbit is directed to file a notice informing the Court when it has served the defendants.

3.    **No later than April 30, 2026**, the defendants must respond to Sunbit's Motion for a Preliminary Injunction.

4.    Sunbit's Motion for Expedited Discovery (Doc. 5) is taken under advisement. The defendants must respond to it **no later than May 1, 2026**.

5.    **No later than May 4, 2026**, all parties must inform the Court whether an evidentiary hearing regarding Sunbit's motion for a preliminary injunction is needed and, if so, to propose a date and estimated length for the hearing.

**ORDERED** in Tampa, Florida, on April 22, 2026.

Kathryn Kimball Mizelle
United States District Judge

9